[No. 614.   Decided January 24, 1893.]

# W. W. Beck, *Appellant*, v. Ravenna Milling Company, *Respondent*.

**FRAUDULENT REPRESENTATIONS — ACTION FOR — NON-SUIT.**

In an action for fraudulent representations, whereby plaintiff was induced to subscribe and pay a subsidy for the location and operation at a certain point, of a flouring mill of a capacity of two hundred barrels daily, together with the necessary and sufficient warehouse room, the plaintiff introduced in evidence the contract of defendant with a company for the erection of a "mill to have an easy capacity of one hundred and fifty barrels of flour per run of twenty-four hours, and on trial test of six hours to make two hundred barrels." Plaintiff did not produce the evidence of any person who had actually witnessed the facts connected with any test of the capacity of the mill, nor the evidence of any person skilled in mill matters as to its capacity; nor was there any evidence tending to explain the language of the subsidy contract in regard to the daily capacity of two hundred barrels. The only evidence concerning the warehouse was that of plaintiff, who said that it seemed to him small, and that the company had a warehouse at another point where they stored flour. *Held*, That a motion for non-suit should have been granted.

*Appeal from Superior Court, King County.*

*Allen & Powell*, for appellant.

*Strudwick, Peters & Van Wyck*, for respondent.

The opinion of the court was delivered by

Stiles, J.—Appellant having subscribed to a fund as a subsidy to be expended in the erection of a flouring mill, paid his subscription on the representations of respondent's officers that the mill had been completed in accordance with the contract, and in an action for the falsity and fraudulent nature of the representations whereby he was deceived and induced to pay his subscription, he objects to several charges given by the court to the jury.

Whatever error there may have been in these charges was not prejudicial to the appellant, because, as we view the evidence, he made no case which should have been submitted to a jury. The material portions of the subsidy contract are as follows:

"We, the undersigned subscribers, agree to pay the amount set opposite our names as a subsidy to secure the location of a flouring mill at Ravenna Park station, upon the following terms and conditions: 'Said flouring mill, together with the necessary and sufficient warehouse room, shall be completed and operated so soon as the same may reasonably be completed; work to begin within thirty days from date. Said flouring mill shall have a capacity of two hundred barrels daily.' "

The complaint alleged as a ground of damage that the respondent had wholly failed to comply with his contract; but upon the trial the only evidence adduced by appellant was directed to two points: *First*, That the mill actually erected had a capacity of less than two hundred barrels daily; *second*, that the warehouse room provided was insufficient. Appellant himself testified that he was not a milling man and knew nothing about mills, but that he knew that the mill erected was not a two hundred barrel mill; first, from reading the contract made between the respondent and the Nordyke & Marmon Company for the erection of the mill; and, second, because the employés had told him so. Of course, what the employés told him was incompetent, and the court rightly told the jury to disregard it.

The contract between the respondent and the Nordyke & Marmon Company contained the following provision, upon which the appellant practically based his whole case:

"Articles of agreement entered into this 23d day of April, 1890, by and between Nordyke & Marmon Company, of Indianapolis, Marion county, Indiana, as first party, and Waters & Morlock, of Brownsville, Linn county, Oregon, as second party, for the erection of a steam power flouring mill, to have an easy capacity of one hundred and fifty

barrels of flour per run of twenty-four hours (and on trial test of six hours to make two hundred barrels).''

This contract was a printed form, in which the words ''easy'' and ''on trial test of six hours to make two hundred barrels'' were written in ink, showing a qualification of what would have been the ordinary printed contract without interlineation.

There was no evidence whatever tending to explain the language of the subsidy contract, that said flouring mill should have a capacity of two hundred barrels daily. It seems to be conceded, however, by the testimony of the appellant, that he understood it to mean a mill which should be able to produce two hundred barrels of flour in twenty-four hours. It is maintained that the mention of one hundred and fifty barrels in the mill contract is alone sufficient to sustain plaintiff's contention that the contract with him was not fulfilled, but that contention cannot be sustained.

The witness Wilson, a man who had never worked in a mill before, but who had been employed in this mill, after it was started in operation, for a period of twenty-one days, testified in substance that upon the 15th of October, 1890, the day when a six hour test was made, he saw someone who was in the employ of the Nordyke & Marmon Company putting into the feed hopper a sack of flour which had been previously ground, and as there were other sacks of flour near by, the argument is that all this flour, some forty or fifty sacks, was dumped in with the wheat and reground, thus having the effect of making the mill to appear to produce more flour during the six hours than it actually did produce. But there was no evidence whatever that more than one sack of such flour was put in on that day, nor does the appellant produce any competent or material evidence whatever to show what the result of the test was, or that the mill would not produce at the rate of two hundred barrels. From the other side of the case there was

uncontroverted testimony that the test showed a rate of upwards of two hundred and forty barrels for twenty-four hours.

Wilson also testified that at a later day the mill foreman told him at noon to clear the flour hopper and observe how much flour was produced from twelve o'clock until six. He says he did so, and took out about forty-three barrels as the result of six hours run; but he says that he did not know whether the mill was then running at its full capacity or not, and it is not shown whether the management of the mill was such as would be reasonably necessary to make any satisfactory test.

No attempt was made by appellant to produce the evidence of any person who had actually witnessed or noted the facts connected with any test of the capacity of the mill, or any person skilled in mill matters.

Concerning the warehouse, the only evidence produced was that of appellant, who said that the warehouse seemed to him small, and he knew that the company had another warehouse in Seattle where they stored flour.

One of the elements of the case as presented to the jury was wholly without the issues made, viz.: That the mill was not operated after it was completed. The subsidy contract called for its operation, but whether from its indefiniteness that clause would be enforcible or not we shall not attempt to determine. The fact is that it was in the original contract. Appellant says that at the time he paid his money respondent informed him, or promised him, that it would operate the mill; but unless it could be shown that that promise was made fraudulently and with no present intention of operating it, it could not enter into such a case as the one at bar. Appellant has his subsidy contract, in which the clause providing for operation exists. If it has not been operated, and he has been damaged thereby, he can maintain his action upon the contract for his injury,

but it constitutes no element of litigation in a suit brought for damages for false representations.

When the plaintiff's case was concluded there was really nothing to be submitted to the jury, and the motion for non-suit ought to have been granted. For these reasons it is unnecessary that we review the instructions complained of, and the judgment will be affirmed.

DUNBAR, C. J., and HOYT, SCOTT and ANDERS, JJ., concur.